### A01A2515. HARPER v. FOXWORTHY, INC. et al.
(562 SE2d 736)

POPE, Presiding Judge.

Roslyn A. Harper filed a complaint[1] seeking to set aside the tax sale of her property on the ground that she did not receive the requisite statutory notices prior to the sale. The trial court dismissed Harper's complaint following a bench trial, and she appeals. We affirm.

"We review appeals from bench trials, where the trial judge sits as trier of fact and has the opportunity to assess witness credibility, under the clearly erroneous standard." (Footnote omitted.) *Mail Advertising Systems v. Shroka*, 249 Ga. App. 484 (548 SE2d 461)

---

[1] The named defendants were Foxworthy, Inc.; Jacquelyn H. Barrett, Sheriff of Fulton County; Arthur E. Ferdinand, Fulton County Tax Commissioner; Vesta Holdings, Inc. as nominee of Heartwood 11, Inc.; Heartwood 11, Inc.; and Aurora Loan Services, Inc.

(2001). Therefore, the trial court's findings of fact will not be disturbed if there is any evidence to support them. Id.

Here, the evidence showed that Harper owned a condominium unit in the City of Atlanta, Fulton County. The Fulton County Tax Commissioner issued bills each year for the collection of City of Atlanta and Fulton County taxes. The commissioner sent Harper two tax bills for the 1998 tax year. The first, a temporary tax bill, was sent on July 15, 1998. The taxes under that bill were due September 1, 1998, and the record shows that Harper's mortgage company paid these taxes on her behalf. The tax records reflect that a second tax bill was sent on March 1, 1999, but no payment was made for Harper's property. Harper testified that she did not receive the second tax billing for 1998, but rather believed that she had paid her taxes in full.

Under OCGA § 48-3-3 (b), the tax commissioner was required to notify Harper in writing that her taxes had not been paid and that, unless paid, an execution for nonpayment of taxes would be issued. Fulton County computer records reflect that this delinquency notice was sent to Harper on June 21, 1999. Harper denies receiving this notice. In any event, no tax payment was forthcoming, and the tax commissioner issued tax executions, or fi. fas., on the property in accordance with OCGA § 48-3-3 (a). These fi. fas. were filed and recorded on August 9, 1999.

Under Georgia law, a third party may pay a tax execution in exchange for the transfer of the execution to that third party. OCGA § 48-3-19 (a) (1). But before the transfer can be made, the prospective transferee is required to notify the property owner by certified mail or statutory overnight delivery of the transferee's intent to pay the tax executions. OCGA § 48-3-19 (b) (1).

Thomas Biggers, the Delinquent Tax Administrator with the Fulton County Tax Commissioner's Office, testified that under office policy a transfer of a fi. fa. would not be made unless the prospective transferee submitted proof that it had given the statutory notice to the property owner. He stated that Vesta Holdings, Inc., as nominee for Heartwood 11, Inc., submitted the proof that it had supplied the necessary notice to Harper. He identified an undated letter from Vesta notifying Harper of its intent to pay the tax executions and stated that it conformed with the statutory notice requirements. Biggers also noted that the letter referenced the number "P902509252," which he stated was a postal identification number for a certified piece of mail. That number corresponded to an article number appearing on a U. S. Post Office Certified Mail Firmbook page introduced at trial. The corresponding entry for that number reflected a certified mailing to Harper from Vesta on August 9, 1999. Nevertheless, Harper denies receiving this notice.

The tax executions were subsequently transferred to Vesta, which forwarded them to the Sheriff of Fulton County for levy and sale. Before proceeding with the sale, the sheriff must give the property owner 20 days written notice of the intended levy against his property. OCGA § 48-3-9 (a). A Vesta employee testified that it was the company's practice to prepare and send out these notices on the sheriff's behalf. The employee then identified a copy of the notice and a copy of the Certified Mail Firmbook page indicating that the notice was mailed to Harper by certified mail on April 21, 2000. Vesta also arranged for a court-appointed process server to personally serve Harper with a copy of the notice. Vesta introduced a copy of the return of service indicating that a copy of the notice had been tacked to Harper's property, although the process server was not called at trial or subjected to any cross-examination on the issue. In addition, Vesta published the notice of the sale in the Fulton County Daily Report pursuant to OCGA § 48-4-1 (a). Harper denies receiving or seeing any copies of this notice.

Vesta further mailed Harper a ten-day notice of the impending levy and sale, as required under OCGA § 48-4-1 (a). The Vesta employee identified a copy of this notice and a Certified Mail Firmbook page, which she said indicated that the notice was sent by certified mail to Harper on May 20, 1999. Harper denied receiving this notice prior to the sale, but states that she did receive the notice at 5 p.m. on June 6, 2000, the date of the tax sale. By that time, Foxworthy, Inc. had already purchased the property. Harper testified that she went to pay her taxes the following day, but was told that it was "too late."

1. Harper contends the tax sale should have been set aside because she failed to receive the proper notices, which denied her due process of law.

The trial court here found that although Harper may not have actually received the notices regarding the tax consequences to her property, the defendants had properly complied with the statutory requirements. The court found that the notices had been *sent* to Harper, many by certified mail, and concluded that this was sufficient to satisfy the statutory requirements, in light of evidence that Harper at times failed to retrieve her certified mail in a prompt fashion.

Harper asserts, however, that under the tax statutes there must be proof that the property owner received the notice, citing *Hamilton v. Edwards*, 245 Ga. 810 (267 SE2d 246) (1980). In *Hamilton*, the taxpayer had filed an appeal to a reassessment of his property 16 days after the Board of Tax Assessors mailed the notice to him, but within 14 days of receiving the notice. Under the applicable law, the taxpayer was given fifteen days to appeal, and the Board took the posi-

tion that the appeal was one day late. Id. Our Supreme Court held under the circumstances of that case, notice occurred on the date the taxpayer received the notice and not from the date of mailing. Id. at 812.

But the Supreme Court also noted that notice can be either express, implied, or constructive. No issue of constructive or implied notice existed in the *Hamilton* case, but there is at least some evidence of such notice in this case. The *Hamilton* opinion defined constructive notice as "information or knowledge of a fact imputed by law because the fact could have been discovered by proper diligence and the situation was such as to cast upon a person the duty to inquire into it." Id. at 811-812. Implied notice "is that notice which is inferred or imputed to a party by reason of his knowledge of facts or circumstances collateral to the main fact, of such a character to put him upon inquiry, and which, if inquiry were followed up with due diligence, would lead him directly to the knowledge of the main fact." Id. at 812.

The trial court found that no actual notice had been received, but that the requisite notices had been sent. We find no clear error in the court's findings. Thus, at least four separate notices were properly addressed and mailed to Harper, three of which were sent by certified mail. The record is silent as to whether any of the certified mail receipts were returned as unclaimed or refused. But there was evidence to support the trial court's conclusion that Harper did not always pick up her certified mail within a reasonable time. Harper testified that her work frequently took her out of town, and that when in town her working hours prevent her from getting to the post office while it is open. She admitted that she may not have picked up every piece of certified mail after receiving a post office notification, although she said it was her habit to do so. In addition, she admitted receiving the last of the notices, which the evidence showed was sent in the same fashion and by the same party as the earlier two certified letters.

Accordingly, we find that the trial court was authorized to conclude under these circumstances that Harper had constructive or implied notice equivalent to the receipt of actual notice, and that with reasonable inquiry she could have discovered her delinquent tax status. See generally *Five Star Steel Contractors v. Colonial Credit Union*, 208 Ga. App. 694, 695-696 (431 SE2d 712) (1993) (certified mail method of notice should not depend upon the recipient's diligence in retrieving the mail).

2. Moreover, even if Harper was not provided the requisite notice of the tax sale, this failure will not suffice to set aside the tax sale of her property. *GE Capital Mtg. Svcs. v. Clack*, 271 Ga. 82, 83 (1) (a) (515 SE2d 619) (1999); *Haden v. Liberty Co.*, 183 Ga. 209, 211 (1) (188

SE 29) (1936). It is "the rule in this state that defects in following the notice provisions of the tax sale statute may give an injured party a claim for damages, but will not render the tax sale or the deed therefrom void." (Citation omitted.) *Clack*, 271 Ga. at 83 (1) (a).

This is because the notice requirements are considered to be directory in nature: "The law requiring notice to be given, property advertised, etc., is directory to the officer. His neglect to observe these requirements may subject him to a suit for damages at the instance of any party injured thereby, but will not affect the title of a bona fide purchaser at his sale." (Citations and punctuation omitted.) *Haden*, 183 Ga. at 211 (1). Therefore, a purchaser at a tax sale is entitled to presume that the sheriff has performed the necessary steps to make the sale valid. Id.; *Clark v. C. T. H. Corp.*, 181 Ga. 710, 715 (5) (184 SE 592) (1936). In fact, even if a purchaser were put on notice that the sheriff may not have complied with each of these steps, the tax sale would not be void "in the absence of fraud or collusion on the part of the purchaser." (Citations, punctuation and emphasis omitted.) *Sizemore v. Brown*, 179 Ga. App. 594-595 (347 SE2d 345) (1986).

Here, because there was no evidence that Foxworthy, the purchaser of the property, was involved in any collusion or fraud to deprive Harper of the requisite notice, the tax sale could not be set aside on that ground. And Harper sought no monetary damages in connection with the sale. Therefore, the trial court properly dismissed Harper's complaint.

3. In light of our holding in Divisions 1 and 2 above, we need not reach Harper's argument that the trial court erred in dismissing her claim for attorney fees.

*Judgment affirmed. Blackburn, C. J., and Mikell, J., concur.*

DECIDED MARCH 11, 2002 —
RECONSIDERATION DENIED MARCH 27, 2002 — ▮▮▮▮▮▮

*William H. Arroyo*, for appellant.
*Proctor & Chambers, Robert J. Proctor, Bradley A. Hutchins, Rodney T. Floyd, Overtis H. Brantley, Vernitia A. Shannon*, for appellees.